**SUNRAY DX OIL COMPANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION,**
**Respondent.**

**No. 7781.**

United States Court of Appeals
Tenth Circuit.

June 30, 1965.

James J. Flood, Jr., Houston, Tex. (Homer E. McEwen, Jr., and J. P. Greve, Tulsa, Okl., on the brief), for petitioner.

Peter Schiff, Washington, D. C. (Richard A. Solomon, General Counsel, Howard E. Wahrenbrock, Sol., Josephine H. Klein, Attorney, Federal Power Commission, on the brief), for respondent.

Francis H. Caskin, Washington, D. C. (John A. Ward III, Philadelphia, Pa., Philip D. Endom, Charles F. Heidrick, Beaumont, Tex., J. Colbert Peurifoy, Dallas, Tex., Robert E. May, Washington, D. C., Martin A. Row, Dallas, Tex., and May, Shannon & Morley, Washington, D. C., on the brief), for Sun Oil Co. on motion for leave to intervene.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Sunray DX Oil Company and nine others filed a petition to review the Commission's Opinion 422 and order of March 23, 1964, as affirmed on rehearing by Opinion 422–A and order of May 27, 1964. We sustained the Commission's motion to dismiss all petitioners but Sunray and denied a similar motion to dismiss Sunray without prejudice to the renewal of the motion after certification of the record. See Amerada Petroleum Corp. v. Federal Power Commission, 10 Cir., 338 F.2d 808. The Commission then, in accordance with our Rule 34(7) certified and filed with the clerk a list of the materials comprising the record, and renewed its motion to dismiss Sunray. Sunray moved for a clarification of the court's orders reported in 338 F.2d 808, 810–811. Sun Oil Company then petitioned for leave to intervene. The two motions and the petition in intervention are now before us.

By its Opinion 422 the Commission issued permanent certificates of convenience and necessity to numerous independent gas producers, including Sun-

ray and Sun, whose individual certificate applications had been consolidated for hearing and disposition. Pursuant to § 19(b) of the Natural Gas Act,[1] petitions for review were filed in the District of Columbia, Third, Fifth, Sixth, and Tenth Circuits with the petition in the Tenth Circuit being filed first. Section 2112 (a), 28 U.S.C., provides that if proceedings have been instituted in two or more courts of appeals with respect to the same order, the agency concerned shall file the record in that court where the proceedings were first instituted and the other courts in which such proceedings are pending shall transfer them to the court of appeals in which the record has been filed.

Various petitioners have sought to have the actions filed in circuits other than the Tenth transferred to the Tenth Circuit. The Commission has successfully resisted such motions on the ground that transfer would not be proper until after the determination of jurisdiction in the Tenth Circuit.

Sun filed a petition to review Opinion 422 in the Third Circuit. After the Commission filed in the Tenth Circuit the certificate listing the materials comprising the record,[2] Sun moved for the transfer of its case to the Tenth Circuit. The motion was denied. This action made it impossible for Sun to proceed. Nothing could be done in the Third Circuit because the record was not there;[3] and Sun could do nothing in the Tenth Circuit.

Sun then moved to intervene in the instant case. The Commission opposed the motion saying that intervention is not proper because jurisdiction and venue are absent and because Sun has no legally protectible or recognizable interest in the Sunray petition. Our Rule 34(6) permits intervention in actions to review orders of administrative

---

1. 15 U.S.C. § 717r(b).

2. Our Rule 34(7) provides in part: "The filing of a certified list of the material in the record and the holding of such material for and subject to the directions of the clerk of the court shall be deemed the full equivalent of the filing of the entire transcript of the record in the court." The Third Circuit has a similar rule. See its Rule 18(7).

3. Similarly the petitioners in the District of Columbia, Fifth, and Sixth Circuits could not proceed because of the absence of the record.

agencies and in proceedings under it we have never required that intervenors establish venue in this circuit.[4] The Commission's argument that Sun has no interest in Sunray's petition to review Opinion 422 is not persuasive. Sun was a party to the administrative proceedings which resulted in Opinion 422 and is substantially affected thereby.

In the situation presented intervention is a permissive matter. The circumstances are such that leave to intervene is granted. By this action we do not intend to say that in other circumstances we would permit intervention by one producer in an action brought by another producer to review a Commission order or that any relief may be granted to intervenor Sun in these proceedings. Sun is entitled to be heard and intervention is a proper vehicle to obtain a hearing.

Opinion 422 dealt with applications for certificates of convenience and necessity sought by producers of gas from properties located in Texas Railroad Commission District No. 4. These producers had contracted with pipeline companies for the sale of the gas. Sunray was an applicant for a certificate. Among other things the Commission by Opinion 422 prohibited an initial price in excess of 16 cents per MCF and ordered a moratorium on price increases in excess of 18 cents per MCF.

Sunray's application was filed on January 23, 1961, and covered a contract for sale of gas from one well to Tennessee Gas Transmission Company for a period of 20 years with an initial price of 17.24347 cents per MCF and an escalation to a maximum of 20.24347 cents per MCF.

On October 9, 1962, the attorney for Sunray wrote the Commission that the well from which it had been delivering gas to Tennessee was shut in, that Sunray had not obtained a cancellation of the gas sales contract, and that because of the lack of cancellation he understood that the Commission would not entertain an application to abandon.[5] The Commission's reply does not appear in the portions of the record reproduced for us. In any event the Commission continued Sunray as a party in the consolidated proceedings, and Opinion 422 and the order entered pursuant thereto apply to Sunray.

The examiner who heard the various applications pointed out in his decision made July 23, 1963, that the temporary certificates issued by the Commission to certain applicants, including Sunray, "do not provide for refunds in the event that the initial public convenience and necessity price is found to be lower than the prices authorized under the temporary certificate authorizations," and did not order any refunds by those applicants. On this point the Commission disagreed with the examiner and held that: "The decision whether refunds should be ordered as a condition to the other certificates [including Sunray's] herein issued is deferred for subsequent determination."

The Commission says that Sunray is not aggrieved and cannot maintain a peti-

---

4. See, for example, Pan American Petroleum Corp. v. Federal Power Commission, 10 Cir., 339 F.2d 694, reversed on other grounds 381 U.S. 762, 85 S.Ct. 1802, 14 L.Ed.2d 714.

5. The letter read in part: "This will serve to advise that the one gas well from which Sunray has been delivering gas to its purchaser, Tennessee Gas Transmission Company (Tennessee), pursuant to the temporary authorization issued Sunray in the captioned proceeding on February 14, 1961, has been shut-in since April 25, 1962, because of inability of the well to produce gas. Sunray's Engineering Staff has concluded that it is infeasible to do any further work on this well in an effort to make it again a producing gas well. However, no cancellation of the Sunray gas sales contract comprising Sunray's related Rate Schedule No. 210 has been obtained. It is Sunray's understanding that because of such fact, the Federal Power Commission (Commission) would not entertain an Application for Permission to Abandon at this time."

tion to review under § 19(b).[6] The argument is that because Sunray is not producing or selling any gas under its contract with Tennessee, the only injury to Sunray is the possible obligation to make a refund and no such refund has been ordered.

The question is whether Sunray is presently aggrieved.[7] Sunray says that it is aggrieved because the order fixes an initial price lower than the contract price and that it presently has a right to contest that initial price because of its potential bearing on the refund issue.

After the examiner's decision in this case and before the Commission's opinion, the District of Columbia Circuit, in Public Service Commission of State of New York v. Federal Power Commission, 117 U.S.App.D.C. 287, 329 F.2d 242, 250, certiorari denied sub nom. Prado Oil & Gas Co. v. Federal Power Commission, 377 U. S. 963, 84 S.Ct. 1644, 12 L.Ed.2d 735, held that the Commission could order refunds of any amounts collected over the in-line price established in § 7 proceedings even though the temporary certificate contained no refund provision.[8] Perhaps this decision had weight in influencing the Commission to reject the examiner's recommendation on the refund issue. In any event we are convinced that the Commission intends that the in-line price has an important, if not controlling, effect on refunds. Indeed

Opinion 422 after referring to the exceptions taken to the examiner's decision says that the amount of refunds is affected by the resolution of the initial price question.[9] In neither brief nor oral argument does the Commission deny the effect of the price determination on the question of refunds.[10] The attitude of the Commission is a real and presently existing threat that the refund obligation of Sunray will be the difference between the collected contract price and the determined initial price.

In its intervention Sun calls attention to a February 5, 1963, order of the Commission denying the motion of certain distribution companies, which were parties to the consolidated proceedings, either to vacate the unconditioned temporary certificates or to impose indefinite, floorless refund conditions. The theory of Sun is that the effect of this order, from which no appeal was taken, is to preclude the imposition of a refund obligation on a producer to which an unconditioned temporary certificate was issued and, hence, to establish that Sunray is not aggrieved. To determine this point we would have to consider the merits of the case, at least in part.

The contention of Sun emphasizes the difficult position in which the court has been put. We are asked to determine threshold questions which bear on the merits. Perhaps after hearing the

---

6. Section 19(b) reads in part: "Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States * * *."

7. Sunray Mid-Continent Oil Co. v. Federal Power Commission, 10 Cir., 270 F.2d 404, 407, 408.

8. In its footnote 8 on page 250 the court points out that its decision may be inconsistent with the Tenth Circuit decision in Sunray Mid-Continent Oil Co. v. Federal Power Commission, 10 Cir., 270 F.2d 404.

9. The language of the Commission is: " * * * all exceptions concern the initial price question in one form or another and even the amount of refunds

is affected by the resolution of this issue." Mimeo copy of opinion p. 7.

10. In commenting on the attitude of the Commission Sun points out the following statement made on page 14 of the Commission's brief in support of its application for certiorari in Federal Power Commission v. Callery Properties, Inc., 380 U.S. 931, 85 S.Ct. 935, 13 L.Ed.2d 820: " * * * In our view, a producer who commences service * * * under a temporary certificate issued *ex parte*, should be permitted to collect and retain no higher price than that which he would have received under a properly conditioned permanent certificate. In short, he is entitled to no more than an 'in-line' price until such time as a just and reasonable rate is determined."

merits we would be convinced that Sunray is not aggrieved, but we are not so convinced now. We well recognize the responsibility of the court to be satisfied as to its jurisdiction. We also recognize that in some cases a jurisdictional question is so intertwined with the merits [11] that ruling thereon should be deferred until a hearing of the merits.[12] Ofttimes in Federal Power Commission cases we have deferred the disposition of motions to dismiss until the hearing of the merits and no party has objected.[13] No such route is open to us in the case at bar. The Commission has made it eminently clear that the petitions to review its Opinion 422 will not move forward until we make a definitive determination of its motion to dismiss. We have no real choice except to decide the motion now.

The District of Columbia Circuit has said that aggrievement within the meaning of § 19(b) "is a status conferred by Congress upon a party who * * * is likely to suffer injury" by an administrative determination,[14] and that "aggrievement must be present and immediate, or at least must be demonstrably a looming unavoidable threat." [15] Although these statements were made in cases where the petitioner was not a gas producer, we see no reason why they should not apply here. Sunray is likely to suffer injury because of the determination of the in-line price. The position of the Commission that a holder of an unconditioned temporary certificate is entitled to retain no more than an in-line

price is an unavoidable threat that the Commission will require Sunray to make refunds. The situation is immediately pressing [16] because if Sunray does not question the initial price in this petition to review, it will be forever foreclosed from so doing. We hold that Sunray is an aggrieved party within the meaning of § 19(b).

The other grounds asserted in support of the motion to dismiss deserve little consideration. The Commission says that Sunray did not take exceptions to the examiner's decision. That decision came after Sunray had stopped production from the well servicing the Tennessee contract and the examiner did not order refunds from those holding unconditioned temporary certificates. The result was that Sunray was not hurt. Sunray's aggrievement did not come until the Commission declined to follow the examiner on this recommendation. By its failure to except Sunray waived nothing. For a waiver to be effective it must be knowledgeable. Sunray had no knowledge that the Commission would upset the examiner on the refund issue.

Finally, the Commission says that the petition for rehearing of its Opinion 422 and order thereon, which under § 19 (a) [17] is a condition precedent to court review, was insufficient because it was neither signed nor verified by anyone on behalf of Sunray.[18] If the signing and verification were technically insufficient, the Commission could have rejected the application because of violation of its

---

11. See Land v. Dollar, 330 U.S. 731, 735, 67 S.Ct. 1009, 91 L.Ed. 1209.

12. See Fireman's Fund Ins. Co. v. Railway Express Agency, Inc., 6 Cir., 253 F.2d 780, 784, and 2 Moore, Federal Practice, ¶ 12.16, pp. 2274–2275 (2d ed.). See also Rule 12(d), F.R.Civ.P., which permits the deferring of certain defenses including lack of jurisdiction until the trial.

13. This occurred in the group of cases reported under the style of Texaco, Inc. v. Federal Power Commission, 10 Cir., 317 F.2d 796, reversed on other grounds 377 U.S. 33, 84 S.Ct. 1105, 12 L.Ed.2d 112, rehearing denied 377 U.S. 984, 84 S.Ct. 1881, 12 L.Ed.2d 753.

14. City of Pittsburgh v. Federal Power Commission, 99 U.S.App.D.C. 113, 237 F.2d 741, 746.

15. Cincinnati Gas & Elec. Co. v. Federal Power Commission, 101 U.S.App.D.C. 1, 246 F.2d 688, 694.

16. See Eccles v. Peoples Bank of Lakewood Village, Cal., 333 U.S. 426, 432, 68 S.Ct. 641, 92 L.Ed. 784, rehearing denied 333 U.S. 877, 68 S.Ct. 900, 92 L.Ed. 1153.

17. 15 U.S.C. § 717r(a).

18. The application for rehearing was filed by ten named producers and verified by the attorney for one of them.

rules and regulations. Instead it accepted the application for rehearing and acted thereon. In the circumstances the technical objection deserves no further comment.

The petition for leave to intervene is granted. The motion to dismiss is denied. In view of our action on the motion to dismiss, the motion for clarification is moot and, accordingly, denied.